

# THE KREISS LAW FIRM
FEDERAL AND STATE CRIMINAL DEFENSE

---

**1824 SOUTHEAST FOURTH AVENUE**  
**FORT LAUDERDALE, FLORIDA 33316**

**TELEPHONE 954.525.1971**  
**FAX 954.525.1978**

May 13, 2021

Honorable Mary Kay Vyskocil  
United States District Judge  
Southern District of New York  
500 Pearl Street  
New York, N.Y. 10007

Re: *U.S. v. Navarro, et al.,* **20-cr-160-MKV (S.D.N.Y.)**

Dear Judge Vyskocil:

The defendants write in response to the Court's May 9, 2021 order directing the defense to file a recusal motion by noon on May 13, 2021. The Court's order was prompted by a May 6, 2021 letter from defense counsel indicating that the defendants were contemplating a recusal motion and respectfully requesting that the Court hold in abeyance its ruling on a pending motion to dismiss until we could address the issue. Our May 6, 2021 letter was sent in good faith based on facts that came to our attention over the past two weeks. We believe the Court may be unaware of the some of the information we set forth below. However, given the Court's deadline, we make this motion now and plan to address with the Court the issues and concerns we raise here at the status conference on May 14, 2021. The government does not join in this motion.

1. <u>Legal Standard</u>

Pursuant to 28 U.S.C. § 455(a), judges are required to recuse themselves from proceedings in which their "impartiality might be reasonably questioned." *See Liteky v. United States*, 510 U.S. 540, 548 (1994) ("[W]hat matters is not the reality of bias or prejudice but its appearance"); *see also Nichols v. Alley*, 71 F.3d 347, 352 (10th Cir. 1995) ("If the question of whether Section 455(a) requires disqualification is a close one, the balance tips in favor of recusal."). Here, given the given the Court's connection to the horse racing industry—specifically as a breeder of racehorses for many years—coupled with its relationships with owners, breeders and other industry representatives, we believe an objective observer might reasonably question the Court's impartiality.

2. <u>The Case</u>

This case represents the largest horse-doping prosecution in the United States. *See* USAO March 9, 2020 (quoting United States Attorney Geoffrey Berman "Todays' unsealing of four indictments for widespread doping of racehorses is the largest ever of its kind from the Department of Justice."), available at: [https://www.justice.gov/usao-sdny/pr/manhattan-us-attorney-charges-27-defendants-racehorse-doping-rings](https://www.justice.gov/usao-sdny/pr/manhattan-us-attorney-charges-27-defendants-racehorse-doping-rings). One of the conspiracies is alleged to have begun almost 20 years ago.

The government alleges that the defendants agreed to create, manufacture, distribute, receive, and administer adulterated and misbranded drugs to improve the performance of thoroughbred racehorses with the intent to mislead and defraud federal and state agencies, drug regulators, racing commissions, racetrack officials, horse owners, the betting public, and others in violation of the felony provisions of federal Food Drug and Cosmetic Act (FDCA). Specifically, Paragraphs 1-3 of the S6 Indictment states:

> Professional horse racing is a $100 billion global industry, which draws millions of fans each year in the United States and around the world. . . .The charges in this Indictment result from a widespread, corrupt scheme by racehorse trainers, veterinarians, PED distributors, and others to manufacture, distribute and receive adulterated and misbranded drugs, including PEDs and drugs promoted as PEDs, and to secretly administer those drugs to racehorses under scheme participants' control. By evading PED prohibitions and deceiving regulators and horse racing authorities, among others, participants sought to improve racehorse performance, increase a horse's frequency of competition, and obtain prize money from racetracks throughout the United States and other countries, including in New York, New Jersey, Florida, Ohio, Kentucky, and the United Arab Emirates ("UAE"), all to the detriment of, and risk to, the health and well-being of the racehorses. Trainers who participated in the scheme stood to profit from the success of racehorses under their control by earning a share of their horses' winnings, and by improving their horses' racing records, thereby yielding higher trainer fees and increasing the number of racehorses under their control. . . . [P]articipants routinely defrauded and misled government agencies, including federal and state drug regulators, U.S. Customs and Border Protection, various state horse racing regulators, certain horse owners and the betting public, among others.

3. <u>Horses Bred by The Court Raced Against Horses Trained by Certain Defendants</u>

Our understanding is that Your Honor bred racehorses for a number of years.[1] For fifteen years, you were also a member of New York Thoroughbred Breeders Inc.[2] Based on our review of racing databases, we have identified at least four instances in which one of your horses competed directly against horses trained by defendants Jason Servis or Jorge Navarro.[3]

---

[1] The May 11, 2006 edition of Thoroughbred Daily News contains a tabulation of annual earnings for one of the horses Your Honor bred named "Here's Ya Souvenir." *See* Ex. A. Earnings, if any, for the other horses Your Honor bred are unavailable, although we are continuing to examine databases.

[2] New York Thoroughbred Breeders is an organization dedicated to the advancement of horseracing in New York and to coordinating activities with racing associations and various state agencies—i.e., entities the Government alleges to be the victims of the Defendants' wrongdoing. Its webpage states that New York Thoroughbred Breeders partners with the New York State Thoroughbred Horse Association, the New York Racing Association, Finger Lakes Racing and Gaming, Finger Lakes HBPA, the Breeding and Development Fund, the NYS Department of Agriculture and Markets, the NYA Racing and Wagering Board, various sales companies, and others. New York Thoroughbred Breeders also operates a political action committee in Albany, which promotes, among other things, the growth of the thoroughbred racing industry in New York. According to its By-Laws, membership in NYTB is limited to persons "currently engaged in the thoroughbred industry as a breeder or stallion owner in the State of New York, lessees and lessors of mares and stallions domiciled in New York, or own property in the State of New York which is utilized for breeding thoroughbreds specifically for the pari-mutuel racing industry and/or others who have demonstrated an interest in furthering the purposes of the NYTB."

The NYTB styles itself as "the official authorized representative of the Thoroughbred breeding industry in New York; the unified voice of Thoroughbred breeders in the State of New York. . . . for the purposes of conducting and coordinating activities with breeding and racing associations and agencies." (https://www.nytbreeders.org/about/overview.cfm.) In other words, we submit, NYTB is an association of breeders and owners dedicated exclusively to the pari-mutuel racing industry—i.e., an industry that is alleged to have been victimized by the Defendants as alleged in the Indictment—which partners with racing associations and agencies—i.e., *other* entities victimized by the Defendants, according to the allegations in the Indictment.

In the past, and at a time Your Honor was a member, the NYTB advocated for proposals that would impose stricter regulations in respect of Clenbuterol in the horse racing industry, a drug at the core of certain allegations in the indictment. https://www.gaming.ny.gov/pdf/NY%20Task%20Force%20on%20Racehorse%20Health%20and%20Safety.pdf;https://www.paulickreport.com/news/the-biz/ny-task-force-perfect-storm-led-to-aqueduct-fatalities-overhaul-needed/

[3] In Race 9 at Aqueduct on Jan. 14, 2006, Jason Servis's horse (Bettor to Receive) raced against your horse (Here's Ya Souvenir). Yours finished 5th, and Mr. Servis's finished 8th.

In Race 5 at Aqueduct on Jan. 14, 2007, Mr. Servis's horse (Watchtheatlantic) raced against your horse (Here's Ya Souvenir). Mr. Servis's finished in 5th, and yours finished in 10th.

4. <u>Horse Breeders are Putative Victims of the Crimes Charged</u>

Horse breeders are entitled to receive a monetary percentage of the offsprings' winnings. *See* N.Y. Comp. Codes R. & Regs. tit. 9 § 4014.1 (summarizing entitlement to and eligibility for breeders' awards); *see also generally* the Rule of the New York Thoroughbred Breeders.[4]

To the extent Your Honor had a financial interest in the outcome of horse races that the Government contends may have been diluted by competing horses allegedly under the influence of performance enhancing drugs, you would fall into the category of putative victims alleged in the Superseding Indictment. As the Government wrote in its response to the pending motions to dismiss (ECF No. 335, pp. 8-9), "[t]hese defendants and their coconspirators were driven by the desire to collect prize money from racetracks, all while avoiding interdiction of their offense by various federal and state authorities, racetrack officials, competitors, and others." *See also, Transcript from 11.17.20 Status Hearing*, 26:9-12 (during which the Government advised that "with respect to misbranding, the racetracks, racing commissions, owners, **competitors** are all among [the] people" whom the defendants are charged with misleading.).

Your Honor's former business partner in the above horse-breeding activities may also be a putative victim. Beginning in 1998, your former partner was a member of the Board of Directors of New York Thoroughbred Breeders, and, from 2009 until 2016, he served as its President.[5] He is an owner of Questroyal Stud Ltd., a thoroughbred stud farm in Saratoga Springs, New York. He is on the Board of the New York Racing Association. And he is a longstanding member of the Jockey Club.

Beginning in 2012, while Your Honor was a partner at Simpson Thacher & Bartlett LLP, the firm represented—for free—the Thoroughbred Retirement Foundation ("TRF") in connection with civil proceedings brought against it by the New York State Attorney General. TRF is a charitable entity dedicated to the care of injured and retired thoroughbred

---

In Race 10 at Tampa Bay Downs on Jan. 27, 2008, Mr. Navarro's horse (Manolo Manolo) raced against a your horse (Here's Ya Souvenir). Yours finished 2nd, and Mr. Navarro's finished in 10th.

In Race 2 at Monmouth Park on July 3, 2009, Mr. Servis's horse (Placid Waters) raced against your horse (Last Boat Home). Mr. Servis's placed 3rd, and your horse finished in 10th.

[4] https:// Nytbreeders.org/breeding/incentives.cfm

[5] *See generally* https://www.nytbreeders.org/news/2014/01/28/nytb-seats-2014-board/;
https://www.nytbreeders.org/news/2012/01/20/nytb-seats-2012-board/;
https://www.nytbreeders.org/news/2010/01/27/nytb-seats-2010-board-barry-ostrager-re-elected-president/; https://www.nytbreeders.org/news/2009/01/13/nytb-elects-new-president-seats-2009-board/

racehorses—i.e., victims of the wrongdoing alleged in the Indictment.[6] As one of your partners averred in an affidavit filed in that action, "[t]he TRF has the moral and financial support of every major New York thoroughbred breeding and racing stakeholder, including the New York Racing Association (NYRA"), the New York Thoroughbred Horsemen's Association (NYTHA"), the New York Thoroughbred Breeders (NYTB), The Jockey Club and the Jockey's Guild."[7] The Court's former firm, in other words, provided *pro bono* representation to a charitable entity arguably victimized by the alleged wrongdoing, supported by financial contributions of *other* victims of the alleged wrongdoing.

### 5. The Investigation

On a call with defense counsel last night, the government agreed that, if the Court is a putative victim, recusal would be appropriate. There are several ways in which the Court's history as a horse breeder may make it a putative victim—if not now, then in the future. First, during recent conversations with the government, it reiterated that it continues to actively investigate this case and that it may supersede the indictment to add charges or defendants or to expand the timeframe of the conspiracy. Second, given the government's ongoing investigation, in calculating loss for sentencing purposes, the government may argue relevant conduct dating back to the period when horses bred by Your Honor raced against horses trained by Jason Servis or Jorge Navarro. In that case, Your Honor would be called upon to rule on the relevance to loss of races in which the Court may have had a financial interest. Third, the government said last night that it may seek to introduce pre-2016 evidence of positive drug tests against defendant Jorge Navarro as Rule 404(b) evidence or as direct proof of the conspiracy.

It has also come to our attention that several of the horses bred by Your Honor and Your Honor's former business partner, and which competed in races, were registered with the Jockey Club.[8] We further understand that your former partner became a member of the Jockey Club in 2013.

The Jockey Club's vice-chairman, Stuart Janney III, reinforced in public comments as recently as last week that the Jockey Club played an indispensable role in the investigation leading to the indictments in this case.[9] In a *Washington Post* article on April

---

[6] "[P]articipants sought to improve race performance and obtain prize money from racetracks…to the detriment and risk of the health and well-being of the racehorses." Indictment, ¶ 2.

[7] *See People of the State of New York v. Thoroughbred Retirement Foundation, Inc.,* No. 401004-12, Supreme Court, NY County (Memorandum of Law in Support of Motion to Dismiss, Statement of Facts, Setion. II, p. 6, ¶ 1, filed 5/14/12); *see also* https://www.drf.com/news/thoroughbred-retirement-foundation-asks-court-dismiss-new-york-lawsuit

[8] http://www.registry.jockeyclub.com

[9] https://www.washingtonpost.com/sports/2021/04/29/horse-racing-doping-jockey-cub/ ( *The Washington Post* describes the relationship between the Jockey Club, 5 Stones Intelligence, Jeff Gural, and Brice

29, 2021, Mr. Janney asserted that persons allegedly involved in horse-doping are "not just going to get slapped on the wrist and pay a fine and disqualify the horse and what have you. [T]he evidence will be sufficient to send them to jail or send them out of our industry forever." [10]

Equally as significant, Mr. Janney also specifically represented in a round-table conference that the Jockey Club hired 5 Stones Intelligence:

> It is with that belief that The Jockey Club undertook our investigation of cheating in racing in 2015…..
>
> With all that in mind, **we hired 5 Stones intelligence**, one of the world's leading intelligence and investigative companies. In a short time, their team had proved to our satisfaction that our worst fears were correct.
>
> They worked closely with federal agencies, particularly the FBI, to ensure that criminals in racing are indicted and prosecuted for the serious crimes they have committed.
>
> This is an appropriate moment to thank the FBI and the federal prosecutors who have worked tirelessly on this investigation. Sadly, their plate is full with many other criminal activities, some violent.[11]

On our call last night, the government acknowledged that the Jockey Club has played a role in the instant investigation. In fact, it stated that government officials met with the Jockey Club as early as 2017.

6. Conclusion

In sum, Your Honor has numerous overlapping relationships with the racehorse industry, racehorse owners, racetracks, and with related state and local agencies. In addition, Your Honor's prior experiences may place you in the category of putative victims of the wrongdoing alleged in this case. Standing alone, or in combination, these facts would cause a reasonably objective observer to question the Court's impartiality. Accordingly, we

---

Cote and writing "[i]n late 2015, Janney decided that if the industry and elected officials wouldn't act, the Jockey Club would. He envisioned a private investigation that would expose widespread doping in the sport.").

[10] *Id.* at 7; *see also* https://www.paulickreport.com/news/the-biz/janney-i-have-no-doubt-more-arrests-coming-in-connection-with-federal-investigation/

[11] http://jockeyclub.com/default.asp?section=RT&year=2020&area=8

believe that recusal is warranted and request the opportunity to address these issues at the status conference.

Very Truly Yours,

/s/ *Jason W. Kreiss*

Jason W. Kreiss, Esq.

Filed on behalf of:

/s/ Jason W Kreiss
The Kreiss Law Firm
1824 S.E. 4th Ave.
Fort Lauderdale, FL 33316
954-525-1971
Email: jwk@kreisslaw.com
*Attorney for Jorge Navarro*

*/s/ Robert E. Goldman*
*Law Office of Robert E. Goldman, LLC*
*The Capri Building*
*535 Hamilton Street, Suite 302*
*Allentown, PA 18101*
Email: reg@bobgoldmanlaw.com
*Attorney for Marcos Zulueta*

/s/ Andrew Simmons Feldman
Feldman Firm PLLC
200 South Biscayne Blvd
Miami, FL 33131
(305)-714-9474
Email: afeldman@feldmanpllc.com
*Attorney for Seth Fishman, DVM*

/s/ Patrick J. Joyce
658 Ridgewood Road
Maplewood, NJ 07040
972-324-2711
Email: pjoyce13@juno.com
*Attorney for Jordan Fishman*

/s/ Deborah Austern Colson
Colson Law PLLC
80 Broad Street,
New York, NY 10004
212-257-6455
Email: dcolson@colsonlaw.com
*Attorney for Erica Garcia DVM*

/s/ Donald T. Rollock
Law Office of Donald T. Rollock
Old Country Road, Suite 690
Mineola, NY 11501
516-248-6080
Email: drollock@rolocklaw.com
*Attorney for Michael Tanuzzo*

/s/ Louis V. Fasulo
Fasulo Braverman &Dimaggio, LLP
225 Broadway, Suite 715
New York, NY 10007
212-566-06213
Email: lfasuo@fbdmlaw.com
*Attorney for Lisa Giannelli*

/s/ Calvin Harold Scholar
225 Broadway, Suite 715
New York, NY 10007
212-323-6922
Email : chscholar@aol.com
*Attorney for Rick Dane, Jr.*

/s/ Page Pate
Pate Johnson & Church LLC
101 Marietta Street, Suite 3300
Atlanta, GA 30303
404-223-3310
Email: page@patejohnson.com
*Attorney for Chris Oakes*

/s/ Michael G. Considine
*Seward & Kissell LLP*
One Battery Park Plaze
New York, NY 10004
212-480-8421
Email: considine@sewkis.com
*Attorney for Jason Servis*

/s/ Stephen P. Scaring
Stephen P. Scaring, P.C.
666 Old Country Road, Suite 501
Garden City, NY 11530
516-683-8500
Email: sscaring@scaringlaw.com
*Attorney for Kristian Rhein*

/s/ Robert M. Baum
Federal Defenders of New York Inc.
52 Duane Street, 10th Floor
New York, NY 10007
212-417-8700
Email: robert_baum@fd.org
*Attorney for Alexander Chan*

/s/ Rita Marie Glavin
Galvin PLLC
2585 Broadway, Suite 211
New York, NY 10025
646-693-5505
Email : rglavin@glavinpllc.com
*Attorney for Jason Servis*

/s/ Scott C. Cox
Cox & Mazzoli, PLLC
600 West Main Street, Suite 300
Louisville, KY 40202
502-589-6190
Email : coxecf@aol.com
*Attorney for Michael Kegley, Jr.*

/s/ David Wikstrom
David Wikstrom
950 Third Avenue, 32nd Floor
New York, NY 10022
212-248-511
Email : davidwikstrom@aol.com
*Attorney for Rebecca Linke*