L5EKNAVC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4             v.                        20 CR 160 (MKV)
                                        Remote Conference
5  JORGE NAVARRO, ERICA GARCIA,
   MARCOS ZULUETA, MICHAEL
6  TANNUZZO, SETH FISHMAN, LISA
   GIANNELLI, JORDAN FISHMAN,
7  RICK DANE, MICHAEL KEGLEY,
   JR., ALEXANDER CHAN, REBECCA
8  LINKE,

9             Defendants.

10 ------------------------------x

11                                     New York, N.Y.
                                       May 14, 2021
12                                     11:10 a.m.

13 Before:

14            HON. MARY KAY VYSKOCIL,

15                                     District Judge

16
                        APPEARANCES
17
   AUDREY STRAUSS,
18      United States Attorney for the
        Southern District of New York
19 ANDREW C. ADAMS
   SARAH MORTAZAVI
20      Assistant United States Attorneys

21 JASON W. KREISS
        Attorney for Defendant Navarro
22
   DEBORAH AUSTERN COLSON
23      Attorney for Defendant Garcia

24 ROBERT E. GOLDMAN
        Attorney for Defendant Zulueta
25

L5EKNAVC

1                          APPEARANCES (Continued)

2    DONALD T. ROLLOCK
          Attorney for Defendant Tannuzzo
3
     ANDREW SIMMONS FELDMAN
4         Attorney for Defendant S. Fishman

5    LOUIS V. FASULO
     ALEX STEPHEN HUOT
6         Attorneys for Defendant Giannelli

7    PATRICK JAMES JOYCE
          Attorney for Defendant J. Fishman
8
     CALVIN HAROLD SCHOLAR
9         Attorney for Defendant Dane

10   PAGE ANTHONY PATE
          Attorney for Defendant Oakes
11
     RITA GLAVIN
12   MICHAEL G. CONSIDINE
          Attorneys for Defendant Servis
13
     STEPHEN P. SCARING
14        Attorney for Defendant Rhein

15   MICHAEL ROMANO MAZZOLI
          Attorney for Defendant Kegley
16
     DAVID PATTON
17   FEDERAL DEFENDERS OF NEW YORK
          Attorney for Defendant Chan
18   BY:  ROBERT M. BAUM

19   DAVID WIKSTROM
          Attorney for Defendant Linke
20
     ALSO PRESENT:
21
     EMMA GREENWOOD, Coordinating Discovery Attorney
22

23

24

25

L5EKNAVC

1          (The Court and all parties appearing telephonically)

2          (Case called)

3          THE DEPUTY CLERK:  Counsel starting with the

4    government, state your appearances, please.

5          MR. ADAMS:  Good morning, your Honor.  You have Andrew

6    Adams and Sarah Mortazavi.

7          THE COURT:  Sorry, Mr. Adams, I'm having a hard time

8    hearing you.

9          MR. ADAMS:  I'll speak up, your Honor.  You have

10   myself and Sarah Mortazavi for the government.  Good morning.

11         THE COURT:  All right.  Thank you, sir.  Good morning.

12         THE DEPUTY CLERK:  I'm going to go down the list and,

13   by defendant, if counsel will state your appearance and then

14   please let us know if your client is on the line as well.

15         Jorge Navarro?

16         MR. KREISS:  Good morning, your Honor.  Jason Kreiss

17   on behalf of Jorge Navarro.  Mr. Navarro is not on the line,

18   and I had sent in a letter seeking his excusal from the

19   hearing, on May 12th.

20         THE COURT:  All right.  Good morning, Mr. Kreiss.

21   Thank you.

22         THE DEPUTY CLERK:  Erica Garcia.

23         MS. COLSON:  Good morning, your Honor.  Deborah Colson

24   on behalf of Erica Garcia, and she is not present for this

25   conference and has waived her appearance.

L5EKNAVC

| | |
|---|---|
| 1 | THE COURT:  All right.  Good morning, Ms. Colson. |
| 2 | Thank you. |
| 3 | THE DEPUTY CLERK:  Marcos Zulueta. |
| 4 | MR. GOLDMAN:  Robert Goldman for Mr. Zulueta, who has |
| 5 | waived his presence. |
| 6 | THE COURT:  All right.  Thank you.  And good morning, |
| 7 | Mr. Goldman. |
| 8 | Could I just ask that all parties who are not speaking |
| 9 | to mute their line because there's a tremendous amount of |
| 10 | feedback.  And if you are not participating in this hearing but |
| 11 | are simply monitoring it, it would greatly facilitate both my |
| 12 | ability and everybody's ability to hear one another, and the |
| 13 | ability of our court reporter to get an accurate transcript, if |
| 14 | you would please all mute your lines. |
| 15 | I'm sorry, Ms. Dempsey. |
| 16 | THE DEPUTY CLERK:  Thank you, your Honor. |
| 17 | Michael Tannuzzo. |
| 18 | MR. ROLLOCK:  Good morning, your Honor.  Donald |
| 19 | Rollock, appearing on behalf of Mike Tannuzzo, and I did waive |
| 20 | my client's appearance for this application. |
| 21 | THE COURT:  All right.  Thank you, Mr. Rollock. |
| 22 | THE DEPUTY CLERK:  Seth Fishman. |
| 23 | MR. FELDMAN:  Good morning, your Honor.  Andrew |
| 24 | Feldman on behalf of Dr. Seth Fishman.  Dr. Seth Fishman is |
| 25 | present for this hearing and is listening in. |

L5EKNAVC

1    THE COURT:  All right.  Thank you, Mr. Feldman.  Good

2    morning.

3    THE DEPUTY CLERK:  Lisa Giannelli.

4    MR. FASULO:  Good morning, Judge.  It's Louis Fasulo

5    for Lisa Giannelli.  Ms. Giannelli is on the line this morning

6    and is present.  I think Alex Huot is also present from my

7    office.

8    THE COURT:  I'm sorry, the other gentleman's name?

9    MR. FASULO:  Alex Huot.

10   MR. HUOT:  Yes, I'm also on the line.

11   THE COURT:  All right.  Good morning, Mr. Fasulo and

12   Mr. Huot.  And good morning, Ms. Giannelli.

13   I neglected to say good morning to Dr. Fishman as

14   well, so good morning.

15   THE DEPUTY CLERK:  Jordan Fishman.

16   MR. JOYCE:  Good morning, your Honor.  Patrick Joyce

17   on behalf of Mr. Fishman.  Mr. Fishman is appearing

18   telephonically.  We did file a request that he be able -- or a

19   waiver of his in-person appearance.

20   THE COURT:  And do you have a Mr. Moore with you?

21   MR. JOYCE:  Mr. Moore is not present.  He's on the

22   case but he's not present.

23   THE COURT:  All right.  So good morning, Mr. Joyce and

24   Mr. Fishman.

25   MR. J. FISHMAN:  Good morning, your Honor.

L5EKNAVC

1          THE DEPUTY CLERK:  Rick Dane.

2          MR. SCHOLAR:  Good morning, your Honor.  This is

3   Calvin Scholar for Mr. Dane.  I believe Mr. Dane is also on the

4   line.  I'm having some problems having my computer connect to

5   the camera, so I apologize for not being visible.

6          THE COURT:  All right.  Good morning, Mr. Scholar, and

7   good morning, Mr. Dane.

8          MR. DANE:  Good morning, your Honor.

9          THE DEPUTY CLERK:  Christopher Oakes.

10         MR. PATE:  Good morning, Judge.  Page Pate on behalf

11   of Mr. Oakes.  He is not on the call with us today.

12         THE COURT:  Good morning, Mr. Pate.

13         THE DEPUTY CLERK:  Jason Servis.

14         MS. GLAVIN:  Good morning, your Honor.  Rita Glavin,

15   along with Michael Considine, for Mr. Servis, who is not

16   present with us on the conference and waives his appearance.

17         THE COURT:  All right.  Good morning, Ms. Glavin.  I

18   was not expecting to see you; I thought you were otherwise

19   engaged on trial, but good morning to you.

20         MS. GLAVIN:  We're off today.

21         THE COURT:  All right.  Good morning, and good morning

22   to Mr. Considine as well.

23         MR. CONSIDINE:  Good morning, your Honor.

24         THE DEPUTY CLERK:  Kristian Rhein.

25         MR. SCARING:  Good morning, your Honor.  Stephen

L5EKNAVC

| | |
|---|---|
| 1 | Scaring for Kristian Rhein.  His appearance has been waived. |
| 2 | THE COURT:  Good morning, Mr. Scaring.  And do you |
| 3 | have a colleague on the line with you? |
| 4 | MR. SCARING:  No, I don't.  Thank you. |
| 5 | THE COURT:  You're welcome. |
| 6 | THE DEPUTY CLERK:  Michael Kegley. |
| 7 | MR. MAZZOLI:  Your Honor, Mike Mazzoli for Mr. Kegley, |
| 8 | and he is also on the line. |
| 9 | THE COURT:  Good morning, Mr. Mazzoli and Mr. Kegley. |
| 10 | THE DEPUTY CLERK:  Alexander Chan. |
| 11 | MR. BAUM:  Good morning, your Honor.  Robert Baum on |
| 12 | behalf of Dr. Chan.  He is not on the line today. |
| 13 | THE COURT:  Good morning, Mr. Baum. |
| 14 | THE DEPUTY CLERK:  And Rebecca Linke? |
| 15 | THE COURT:  Counsel for Ms. Linke. |
| 16 | THE DEPUTY CLERK:  Mr. Wikstrom? |
| 17 | MR. WIKSTROM:  I apologize, your Honor, I muted |
| 18 | myself.  This is David Wikstrom, and Dr. Linke is present as |
| 19 | well. |
| 20 | THE COURT:  All right.  Thank you.  Good morning, |
| 21 | Mr. Wikstrom, and good morning, Dr. Linke. |
| 22 | Any other appearances? |
| 23 | MS. GREENWOOD:  Yes, your Honor.  Emma Greenwood, the |
| 24 | coordinating discovery attorney, is here. |
| 25 | THE COURT:  Thank you, Ms. Greenwood, very much. |

L5EKNAVC

1          Anyone else?

2          All right.  So, needless to say, we are conducting

3    today's proceeding remotely because of restrictions that remain

4    in place as a result of COVID-19.  I did receive a written

5    request from the parties to conduct today's hearing remotely

6    rather than in person at the courthouse, and so I am honoring

7    that request.

8          We are here for a status conference in this case,

9    which was scheduled when we were last together, back in

10   November.  I would note for the record that under Rule 43(b),

11   the presence of the defendant is not required at a conference

12   in a case.  There are numerous cases holding that defendants do

13   not need to attend conferences, so, notwithstanding that, I

14   have received, as some of the counsel have noted when we were

15   taking appearances, I have received written waivers of presence

16   and consents to proceed by videoconference from most, if not

17   all, of the parties.

18          I would just like to give you a few reminders before

19   we get going.

20          Because we're proceeding remotely, as I said at the

21   outset, please mute your lines if you're not addressing the

22   Court.  The sound has gotten much better but I was getting a

23   great deal of feedback.

24          We do have a court reporter on the line with us.

25   Mr. Walker, are you able to hear me and all of the parties

L5EKNAVC

1   clearly?

2           (Pause)

3           THE COURT:  All right.  Thank you, Mr. Walker.

4           So when you do speak, please identify yourself for the

5   record so that I know who's speaking, so that your video pops

6   up and I can see who it is that I'm speaking with, and, most

7   importantly, so that Mr. Walker can get an accurate record of

8   what transpires today.

9           I would just remind everyone, this is a formal court

10  proceeding, as if you were all in open court, and you are

11  strictly prohibited from recording or rebroadcasting any

12  portion of today's proceeding.

13          So, as I said, several defendants have submitted

14  waivers of presence.  I have received requests or waivers from

15  the following defendants:  Alexander Chan — and I would just

16  ask counsel to please listen and correct me if I forget someone

17  or if what I recite is inaccurate — Alexander Chan filed a

18  waiver at ECF No. 64, Kristian Rhein filed at ECF 365, Erica

19  Garcia filed at 366 — someone needs to mute their line, please

20  — Michael Tannuzzo filed a waiver at 367, Marcos Zulueta at

21  369, Jorge Navarro at ECF 370, and Jason Servis at ECF 371.

22          Are there any additional requests for waiver of

23  appearance?

24          All right.  As I noted, defendants' appearance is not

25  required, but having said that, I will endorse or grant each of

L5EKNAVC

1    these requests by the defendants for waiver of their appearance

2    at today's conference.

3            I've also received written confirmations from the

4    following defendants to proceeding remotely by videoconference

5    today:  Jordan Fishman at ECF 359 -- is that accurate, counsel?

6            MR. JOYCE:  Yes, your Honor.

7            THE COURT:  All right.  I would note that what was

8    filed on the docket is not signed by the defendant.  I believe

9    you told me Mr. Fishman is on the line, correct?

10           MR. JOYCE:  He is, your Honor.  And under his

11   signature there is a parentheses that says the Court would

12   inquire and sign on his behalf.

13           THE COURT:  Yes, so that's what I intend to do.

14           Mr. Fishman, do you in fact consent to proceeding

15   today by videoconference rather than appearing before me in

16   open court.

17           MR. J. FISHMAN:  Yes, I do.  Thank you, your Honor.

18           THE COURT:  All right.  Thank you.

19           I have a consent from the following defendants as

20   well:  Michael Kegley at 360, Jason Servis at 361, Rick Dane at

21   ECF 362, Dr. Linke at ECF 363, Marcus Zulueta at 369, Dr. Seth

22   Fishman at 373.

23           I then have two consents that were not filed on the

24   docket from Lisa Giannelli and Kristian Rhein.  I would ask

25   counsel for those defendants to please file those consents on

L5EKNAVC

1    the docket in the case.

2          Am I missing any other defendants who have filed a

3    written consent to proceed by videoconference?

4          All right.  I have not done a check that I have

5    something from every defendant, so I will give a final

6    opportunity for anyone who wishes to object to proceeding by

7    videoconference, to do so now.

8          All right.  Hearing none, we will proceed with this

9    conference by video.

10          Now, as I said, at the last conference, it was agreed

11    that discovery would be ongoing and that we would reconvene

12    today for a further status conference, at which we would talk

13    about things like trial scheduling.  In the interim, three

14    defendants filed motions to dismiss, on which the Court was

15    diligently at work and close to issuing a ruling.  Then, more

16    than 14 months into this case, and after defendants had filed,

17    as I say, hundreds of pages in support of their motion to

18    dismiss the criminal indictment against them, motions which

19    were fully briefed in April and on which the Court has been

20    diligently working since that time, last week, defendants filed

21    a letter advising the Court that they were, quote, considering

22    moving to recuse me from presiding over this case.

23          Yesterday afternoon, after consultation with, and over

24    objection by, the government, defendants filed a letter asking

25    me to recuse myself from this case, over which I have presided

L5EKNAVC

fairly for more than a year and a half.  All of the information
upon which defendants rely has been publicly available since
the case was assigned to me.  This meritless motion appears to
be calculated to divert attention from the serious crimes with
which the defendants have been accused, and to obstruct and
delay the orderly administration of the case.

        The motion is denied as frivolous, an obvious tactical
gambit to delay the determination of defendants' motion to
dismiss.

        No reasonable person would, or could, believe that I
cannot preside fairly and impartially over this case based upon
my ownership, my past ownership, of incidental fractional,
financially negligible, interest in two horses whose offspring
— offspring which I did not own — apparently ran in four races
against horses trained by Defendants Servis or Navarro some 15
years ago, which is a decade or more before the alleged
conspiracy involving Messrs. Servis or Navarro is alleged to
have begun.

        The opposition, filed late last night by the
government, puts the lie to confected charges by defendant that
I had a potential financial interest in the outcome of four
races that took place in 2006, 2007, 2008, and 2009, in which
Defendants Servis- and Navarro-trained horses supposedly ran.

        First, defendants argue that I should recuse myself
because I was a breeder of horses that raced against horses

L5EKNAVC

1    trained by Navarro or Servis, as I say, in four races from 2006

2    to 2009.  Defendants' motion initially states that I, quote,

3    bred these horses, but then it misleadingly characterizes them

4    as, quote, my horses.  Defense counsel and their clients well

5    know, or they should, that breeding horses and owning horses is

6    not the same thing.  I held a fractional interest in two horses

7    whose offspring, which I did not own, then raced, apparently on

8    four occasions — one horse raced three times, the other horse

9    raced once — against horses trained by either Mr. Navarro or

10   Mr. Servis.

11          As defendants surely must know, based on their

12   experience in the industry, my fractional interest in these

13   horses, which, at best, would have provided inconsequential

14   income to me in the form of breeders' awards, if the horses had

15   run in New York, which they apparently did not, these

16   fractional, negligible potential interests from nearly 13 to 15

17   years ago are precisely the remote interests that the Second

18   Circuit has stated clearly is not sufficient grounds for

19   recusal, and I would refer you to the *Drexel Burnham* case.

20          Defendants also suggest that somehow I could be a,

21   quote, victim of the wrongdoing alleged in the indictment.  But

22   as defendants readily admit, the indictment does not allege any

23   criminal wrongdoing by Mr. Navarro or Mr. Servis before 2016,

24   which is long after the races to which they attach significance

25   in their motions.

L5EKNAVC

1          Now, unless counsel wishes to make an admission that

2     your clients were doping horses ten years before the conspiracy

3     alleged in the indictment, the races referred to in the

4     intentionally misleading letter submitted in support of the

5     recusal motion have nothing to do with this case.  There is no

6     conflict here, and no reasonable person would perceive one.

7          Anyone who thinks this is a serious motion should

8     consider that one of the alleged bases for the recusal motion

9     is that one of my more than 150 or so former partners at my

10     former law firm, from which I retired in 2016, did pro bono

11     work, work in which I had absolutely no involvement, for a

12     nonprofit organization that cared for old, infirmed, retired

13     racehorses.  This nonprofit organization has no discernible

14     connection to the issues in this case and does not in any way

15     call into question my fairness or impartiality.  The bad-faith

16     motion is frivolous and was clearly calculated to generate

17     diversionary press coverage, which it clearly already has.

18          Now, while I carefully considered each of defendants'

19     arguments, I need not respond to each of the confected claims

20     made in the motion.  I will note, however, that the motion

21     contains multiple plainly false statements, which officers of

22     the Court should not have made in a public filing and which are

23     not entitled to be dignified with point-by-point commentary,

24     but, by way of example only:

25          I did not own the two horses from the 2006 to 2009

L5EKNAVC

races that defendants misleadingly referenced as my horses.

Another blatant falsehood:  My former partner, alluded to throughout the motion, is not on the board of the New York Racing Association and has not been on the NYRA board for many years, as he's performing public service for the State of New York and, therefore, resigned from the NYRA board in 2015.

In all events, it's black-letter law that the nonlegal activities of one of my former partners is in no way relevant to the issues of whether I can fairly and impartially conduct this case to conclusion.

Another example of falsehood in the motion:  It is patently false to suggest that I had a financial interest in horses racing at Monmouth or Tampa Downs, since the very regulations defendants themselves cite to in their motion make it clear that the breeders' awards they rely on only apply to races in New York.

Another of the clearly meritless arguments for recusal is that for a period of time, that ended in 2015, I was a member of a breeding organization, the New York Thoroughbred Breeders.

Another, even more attenuated, even more frivolous, argument is that my relationship with a person involved in aspects of the thoroughbred industry is somehow disqualifying. Under black-letter law, those affiliations are irrelevant and obviously not the grounds for recusal.

L5EKNAVC

1          Every court to consider similar contentions has

2    summarily rejected them, and I would refer you to:  *McNeil v.*

3    *Aguilos*, a 1995 case from the Southern District of New York*;*

4    *United States v. Nelson*, 2010, from the Eastern District of

5    New York*; Sevier v. Hickenlooper* from the District of Colorado

6    in 2018*; Sierra Club v. Simkins* from the Fourth Circuit 1988*;*

7    and *Armenian Assembly* from the D.C. Circuit, 2011.

8          No authority suggests that an attenuated or past

9    connection to a nonparty organization requires recusal, even

10   where issues arise on which the organization takes positions.

11   To my knowledge, no organization to which I have ever belonged

12   has taken a position on any issue in this case.  I have been

13   presiding over this case for more than 14 months, during which

14   time I've held numerous hearings, ruled on motions, and managed

15   the case with a view towards moving it towards a reasonably

16   expeditious trial despite COVID restrictions, requests for a

17   protracted schedule, and several requests for adjournments.  I

18   have an affirmative duty to keep this case and to move it

19   forward in the regular course, and I intend to do just that.

20         To that end, prior to receipt of the letter of last

21   Thursday advising that defendants were contemplating making a

22   motion for me to recuse, I was carefully reviewing the

23   voluminous submissions of the parties on the pending motions to

24   dismiss, including literally hundreds of pages of briefings,

25   affidavits, and documents submitted in connection with the

L5EKNAVC

1    motions by certain, but not all, defendants.  Those motions are

2    all denied.

3          Next week I will be issuing a formal opinion setting

4    forth the bases for my decision to deny the motions to dismiss,

5    and after this conference concludes I'll file on the docket a

6    written order reflecting my ruling on the recusal motions.

7          Now, I'd like to turn to the status conference, which

8    is the reason we were scheduled to convene today.

9          Can I please have from the government an update on the

10   status of discovery?

11         MR. ADAMS:  Yes, your Honor.  Hi.  This is Andrew

12   Adams, speaking for the government.

13         Your Honor, discovery has been largely complete.  Most

14   recently, the government has been gathering documents obtained

15   in connection with another one of the cases involving the

16   horseracing industry, U.S. v. Robinson, which is before Judge

17   Oetken.  In connection with gathering those documents, we

18   have -- as we have been doing throughout the proceeding, we are

19   cross-producing those to defendants in this case as well,

20   largely in an abundance of caution, but with some indication

21   that there is some overlap between the companies that were

22   producing drugs that are at the heart of the Robinson case and

23   certain of the defendants in this case.

24         So, recently and upcoming, we expect that we will be

25   making productions of largely grand jury subpoena returns and

L5EKNAVC

1    material from that case to the defendants.  The volume on that

2    is not voluminous, and we're happy to talk about how that plays

3    into this case with defense counsel and give people some

4    guidance on who may be specifically impacted by this

5    production.

6            THE COURT:  All right.  Other than that, Mr. Adams, is

7    discovery complete?  We're getting to the point where discovery

8    needs to be brought to a close.  This case needs to move

9    towards trial.

10           MR. ADAMS:  Agreed, your Honor.  And discovery is --

11   what we had gathered and what we have gathered, we've produced.

12   These are things that we are continuing to receive as we

13   continue to investigate.

14           THE COURT:  All right.

15           Ms. Greenwood, is there anything you want to put on

16   the record?  I do have your last status report, which came in

17   on April 30th.  You reported to me that there was a

18   supplemental production in April.  I don't know the volume of

19   that.  So, Ms. Greenwood?

20           MS. GREENWOOD:  Yes, your Honor.  For the April

21   production, the volume was just about eight gigabytes, and to

22   put that in context, we have in this case over eight terabytes

23   of data, so it was, in the scheme of things, a rather small

24   production.

25           I would like to note for the record that since the

L5EKNAVC

last conference, there have been eight productions of global

discovery, two of which were rather large and were actually

replacements for earlier productions of discovery that I think

were discussed at length at the last conference.

THE COURT:  Right.  I think you had raised with me

some issues with respect to that discovery, right?

MS. GREENWOOD:  Yes, your Honor.

And I can report that there are no remaining technical

issues with any of the global discovery that my office has

received, and all productions have been made available to

defense counsel.

THE COURT:  All right.

Do any defendants wish to put anything on the record

with respect to discovery?

All right.  As I say, I will be issuing --

MS. GLAVIN:  Your Honor, I believe Mr. Baum was

speaking.  I think he had to go off mute.

This is Rita Glavin, for the record.

MR. BAUM:  I apologize.

THE COURT:  No problem.  If this happens, maybe people

should raise their hand, too, because I can see that visually.

I don't see when your mouth is moving.

MR. BAUM:  I forgot to --

THE COURT:  Go ahead, Mr. Baum.

MR. BAUM:  -- unmute following your question.

L5EKNAVC

1            THE COURT:  No problem.

2            MR. BAUM:  Your Honor, I've been asked to speak on

3    behalf of the defense in relation to the discovery and its

4    impact on the motion schedule that was previously set by the

5    Court.

6            THE COURT:  Yes.

7            MR. BAUM:  In the May 7th letter to the Court by the

8    government, which was based on discussions between the parties,

9    the government consented to an extension of time for the filing

10   of motions to August 27th.  In that letter, they described the

11   reasons as trial conflicts — for one, Ms. Glavin, as well as

12   one or two other defense attorneys — and also the opportunity

13   to continue to review discovery.  I can tell the Court that it

14   is important for the discovery to be completed before we file

15   our motions, particularly the motions directed to the wiretaps.

16   And there are numerous reasons for that.

17           A wiretap application must show that the government or

18   the agent has exhausted all other remedies other than wiretaps.

19   And unless we review the discovery that currently exists,

20   which, as Ms. Greenwood noted, is voluminous, and we are

21   struggling to complete it, we are not in a position to be able

22   to effectively address the suppression issue involving that.

23           The wiretaps also must demonstrate that government

24   investigative techniques -- other government investigative

25   techniques have failed.  We can't address that unless we

L5EKNAVC

1    complete the discovery.

2             There are also statements in the wiretap applications

3    which we believe may not be accurate.  We cannot address that

4    until we complete the discovery.

5             So, it's important, and I believe common in the

6    Southern District, for the Court to allow discovery to be

7    completed before the defense files motions, and in this

8    particular case relating to the wiretaps, I've provided the

9    Court with several reasons why it's important to complete the

10   discovery.

11            I will add, as Mr. Adams has told you, that there is

12   discovery that is going to be produced.  In addition to the

13   Robinson case, which will be produced, it's my understanding

14   that there's material discovery from grand jury subpoenas which

15   will be produced.

16            So, these are factors which lead us to request an

17   extension of the time to file the wiretap motions, and we

18   respectfully ask your Honor's indulgence in allowing us to

19   complete our discovery.

20            I might add — and I'm glad Ms. Greenwood is on the

21   line — I might add that it's my understanding, based on

22   Ms. Greenwood's letter to the Court just two weeks ago, that,

23   in addition, Ms. Greenwood and her team are developing a --

24            THE COURT:  Let me just interrupt you because

25   Ms. Greenwood asked that that letter be filed under seal.  So

L5EKNAVC

1    I'm just going to remind you --

2              MR. BAUM:  Yes.

3              THE COURT:  -- to be careful that you are not

4    disclosing privileged communications that she had with

5    defendants.

6              MR. BAUM:  I totally understand, and I appreciate your

7    bringing that to my attention, Judge.

8              The only thing I want to say is that Ms. Greenwood's

9    developing a tool for reviewing the call sheets and the

10   wiretaps.  It would be an online database to be used for

11   documents and emails.  And that tool has not been completed

12   yet, to my understanding, and she's working with the vendor to

13   complete that.

14             So, for all of these reasons, we ask you to allow us

15   to complete a review of the discovery that has currently been

16   provided and to complete discovery generally before we're asked

17   to file wiretap suppression motions, which would require our

18   attention to this discovery.

19             THE COURT:  Anyone else wish to be heard?

20             All right.  The Court -- go ahead, Mr. Adams.

21             MR. ADAMS:  I'm sorry, your Honor.  I was going to ask

22   if I could just respond to that.

23             Discovery that's going out -- that has gone out

24   recently and is going out is almost certainly not going to have

25   any impact on consideration of the wiretaps.  Of course, I

L5EKNAVC

1    think it's been my experience that often the Court will say

2    we're going to set a motion deadline, and if there is discovery

3    from ongoing investigations that provides a new ground for a

4    motion after that deadline, then you can refile new motions.

5    But I don't expect that there's any real material impact on the

6    motions that could be considered based on what we're planning

7    to produce.

8            THE COURT:  All right.

9            MR. BAUM:  Your Honor, with all due respect to

10   Mr. Adams, he advised us that there's material discovery from

11   grand jury subpoenas, so he might not even be aware of the

12   things he receives pursuant to those subpoenas and how they may

13   impact on our filing of motions.

14           THE COURT:  All right.  I understand.

15           The Court does have the letter that I guess was

16   submitted by the government with a proposal asking me to modify

17   the schedule that we talked about at the last conference for

18   these phase two motions, which is the shorthand that we're

19   using to refer to motions to suppress.  The proposed new

20   briefing schedule is way, way too extended, and would push a

21   trial in this case well into 2022, and that's just not

22   acceptable to the Court.  I am willing to adjourn the schedule

23   briefly, but any scheduling that needs to be done -- first of

24   all, I do note that the government has represented that the

25   bulk of the materials in this case have been produced.  I will

L5EKNAVC

1    extend the schedule slightly, and I will also say, in that

2    order, that if there is discovery material subsequently

3    produced that is properly the subject of a motion, I will

4    entertain that motion outside the schedule that I'm about to

5    set, but I am not going to enter a schedule that pushes

6    briefing so that briefing is not even completed until right

7    before Thanksgiving.  That's just not acceptable.

8              So, phase two motions will be due on June 15th,

9    oppositions will be due August 2nd, and replies will be due

10   September 1st.  And, as I say, if there is discovery produced

11   subsequently of which the defendants were not aware, which is

12   properly subject to a motion to dismiss, I will certainly

13   entertain that motion out of turn of this schedule while we are

14   moving forward with the other issues that we need to talk

15   about.

16             MS. GLAVIN:  Your Honor, I think you may have meant

17   July 15th?

18             THE COURT:  No.  I meant June 15th.

19             MS. GLAVIN:  The current schedule for phase two

20   motions, I believe, is that the defense was to file on

21   June 28th.

22             THE COURT:  I thought it was May 24th.

23             MS. GLAVIN:  No.  We had asked for -- there was a

24   letter that we filed, that the Court memo-endorsed on March --

25             THE COURT:  Your letter?

L5EKNAVC

1          MS. GLAVIN:  Yes, your Honor.

2          -- asking for June 28th.

3          THE COURT:  All right.  I will make it July 15th in

4     light of that, and then the oppositions will have to be due --

5     let me just pull out a calendar.

6          I'm sorry, I'm still working off of the May 24th date.

7          August 19th for oppositions, and September 9th for any

8     reply.

9          As I say, if materials are produced -- I understand

10    your point, Mr. Baum, and it's well taken, but if the

11    government produces additional material, you can simply advise

12    the Court that that's come in and that you have a motion that

13    you'd like to make, and I will set a schedule in connection

14    with that.  All right?

15         MR. BAUM:  Thank you, your Honor.

16         THE COURT:  Now, the next thing we should talk about

17    is the question of expert disclosure.

18         The government is proposing, apparently, that that

19    happen, disclosure of proposed experts, at the end of the

20    briefing schedule it was proposing, which was November.  I've

21    just now moved that up to September 9th.  As I understand it,

22    defense counsel want to talk about this at another conference,

23    which you'd like me to hold sometime in the fall.  I certainly

24    will hold another conference in the fall, but I do not see why

25    disclosure of experts cannot proceed while you are reviewing

L5EKNAVC

1    whatever discovery you're reviewing and working on motions to

2    suppress.  I'll hear from anyone who wishes to be heard.

3          Go ahead, Ms. Glavin.

4          MS. GLAVIN:  Your Honor, with respect to expert

5    disclosure, I don't think that the -- correct me if I am wrong

6    on this, your Honor, I don't think the Court is aware of what

7    the government has made disclosures to us on experts.

8          THE COURT:  I know they told me that they've told you

9    of two experts.  That's all they've advised the Court.

10         MS. GLAVIN:  With respect to one of the two experts —

11   and I would call this expert -- her name is Dr. Cole.  With

12   respect to the expert reports we received from the government

13   in September, I think there were approximately --

14         THE COURT:  I'm sorry, you have both reports and the

15   names?

16         MS. GLAVIN:  Yes.  There are two experts.  I'm

17   forgetting the name of the second, but the first expert, which

18   I assume is the primary expert for the government, is a doctor

19   by the name of Dr. Cole.  And there were approximately —

20   Mr. Adams can correct me if I am wrong — there were

21   approximately seven or eight different scientific opinions that

22   were given in that disclosure.  There was then a second

23   disclosure in February of this year that also has several

24   additional scientific opinions.  One of the opinions deals with

25   a number of different substances.  We began working with the

L5EKNAVC

1   consultant on this sometime after September, at least with

2   respect to (unintelligible).  The new report that we received

3   in February from the government -- and I want to emphasize that

4   the reports are -- they take up somewhat of a fair amount of

5   time and may require different expertise, so we have -- I know

6   as defense lawyers, we've been discussing it as a group, and

7   part of the issue is, I think, for us is needing to discuss

8   with the government in terms of their own theories at trial

9   what -- so we can have a sense of what expert we want to use,

10  because I think there are three different trial groups, and it

11  may be that they're not --

12          THE COURT:  Yes.

13          MS. GLAVIN:  It may be that they're not going to use

14  one expert or this report for this trial, and that makes things

15  just sort of a little bit difficult on our end.

16          In addition — and I do want to make this clear to the

17  Court — the government has raised with us, and I know your

18  Honor's aware of this from our November conference, but there

19  is a superseding indictment possibility.  Mr. Adams, we

20  discussed this with him, and he -- with respect to some groups

21  of defendants, he has said he does not think there would be new

22  charges, there could be with others.  And while the

23  government's perspective may be that if they bring a

24  superseding indictment, it doesn't change anything, well, a

25  simple word change in the indictment, even if you don't add new

L5EKNAVC

1  charges, to us — and we are the Count Three or Four

2  defendants — a simple word change in the indictment can change

3  what our whole defense theory is and what we think about need

4  for experts or not.

5          THE COURT:  I understand.

6          MS. GLAVIN:  That's what's causing the issue on our

7  end.  So it's not a desire by our end to try and put this off.

8  We just want to get it right, and we don't want to have to

9  expend money on our end for something we may change our mind on

10  and not need.  That's what makes it hard.

11          THE COURT:  I understand.  I also appreciate full well

12  that experts, and even the consultants that you need to get you

13  to experts, are expensive.

14          On my list of things I wanted to talk about, in fact

15  the next thing, was to raise the subject of trial groupings.

16  Back before the November conference, at my request, the

17  government had submitted a letter in which it made suggestions

18  about breaking the defendants into three groups and proceeding,

19  in effect, in three separate trial groupings.  I don't recall

20  that the defendants ever responded to that.  Was that a joint

21  proposal, or do defendants wish to be heard on that?  Not right

22  now, but I would set a deadline.  Where does that discussion

23  stand about trial groupings?

24          MS. GLAVIN:  Your Honor, I'm happy to address it.

25          THE COURT:  Yes.

L5EKNAVC

1          MS. GLAVIN:  I thought, and I may be under the

2    misimpression, that at our last conference, that we were

3    putting off the discussion on severance and groups to see how

4    things developed.

5          THE COURT:  Right.  That's true, but there were

6    discussions with the defendants -- with the government in the

7    meantime.

8          MS. GLAVIN:  I can tell, from at least with respect to

9    my perspective on the Count Three and Four defendants in the

10   group, I don't have an objection to that group, but I don't

11   know if things will change with the government.  And I also

12   don't know if things will change with the government if they

13   supersede and add an additional defendant.

14         THE COURT:  All right.  Fair enough.

15         Mr. Adams, let me ask you, because it's also on my

16   list of questions for you:  What specifically is the

17   government's intention with respect to whether there's going to

18   be another superseding indictment?  Will there be new

19   defendants?  Will there be new charges?  If there's going to be

20   a superseding indictment, when is it coming?  Because the

21   defendants have a fair legitimate point that they cannot

22   realistically be expected to even comment on your proposed

23   trial groupings, much less retain experts and prepare the case

24   for trial, unless and until they know what the indictment looks

25   like.

L5EKNAVC

1          MR. ADAMS:  Thank you, your Honor.

2          As we've discussed with the defendants, to the extent

3     that we seek to add additional charges against the people who

4     are in the case right now, those would be charges based on

5     likely a wire or mail fraud theory that focused squarely on the

6     same facts that are the subject of the discovery submitted to

7     date.

8          THE COURT:  Excuse me one second, Mr. Adams.  Whomever

9     is typing, please stop doing it and please mute your line.

10          Go ahead, Mr. Adams.  I'm sorry.

11          MR. ADAMS:  Thank you, your Honor.

12          That is to say, there is no expectation that filing of

13     a superseding indictment as to the people in this case today

14     would have any impact on what the discovery or the facts

15     underlying the case would be.  There may be, as a result of the

16     superseder, if it comes, a motion to dismiss a new count, but

17     there will not suddenly be a new wiretap application that

18     becomes relevant or a new search warrant that becomes relevant.

19          With respect to new people who may or may not be

20     added, as I've said all along, the government continues to

21     investigate this case and to investigate other related cases.

22     There may well be other people who are charged; they may be

23     coconspirators in this case.  The government would not expect

24     that somebody being added to the case today would be on the

25     same schedule as the people who have been in the case, but

L5EKNAVC

1    that, again, would have no impact on the defendants who are

2    currently in the case.  We wouldn't be seeking to join for

3    trial a defendant who arrived in the case tomorrow, if that

4    were to happen.

5         It's all just speculative.  It's certainly not our

6    intention to announce a superseder next week or next month.

7    And as we sit here today, I am not able to say that we are

8    certainly, or even likely, to add charges in this case.  This

9    is all speculation, and it need not delay moving the case

10   forward.

11        THE COURT:  All right.  Mr. Adams, at some point, the

12   government needs to get real and stop speculating here.  This

13   case is moving forward, and I'm certainly not going to hold

14   anything up for the government to get its act together and

15   decide what it wants to do.

16        Here is what I am going to order:  I'm going to give

17   the parties 30 days to talk about -- and you should just assume

18   that the existing superseding indictment is the operative

19   charging document in this case.  If the government tries to

20   alter that, we'll have to deal with it at that time.  I would

21   like the parties to confer about the proposed trial groupings

22   that the government proposed in advance of the November

23   conference, and I would like you to confer about a schedule for

24   the disclosure by defendants of their experts, assuming the

25   existing indictment is the one on which we're moving forward.

L5EKNAVC

1    And I would like to get a report back from the parties in

2    30 days.  Hopefully, it could be a joint report, but to the

3    extent there are disagreements, those should be laid out in the

4    letter.

5            So there's no misunderstanding, it is the Court's view

6    that at least one of these three trial groupings ought to be in

7    a position to proceed to trial during this calendar year.  I

8    don't know, because I don't have a crystal ball, but I am

9    assuming that with all of the new CDC guidelines that are

10   coming out or lifting of in-place guidelines, that we may, at

11   some point, sooner rather than later, be moving back towards

12   normal courthouse operations and individual judges' scheduling

13   of their own trials.  As you know, right now, I do not have

14   control over the ability to set a trial.  Whether I set the

15   trial date or it's set through central scheduling, it is my

16   intention that the first of these trials will be requested for

17   a slot in the fourth quarter of this calendar year, with the

18   others to follow soon thereafter in 2022.  I'm putting everyone

19   on notice of that right now.  And I will look for a report from

20   you all with respect to trial grouping and disclosure of

21   experts in the next 30 days.  We will include a date, concrete

22   date, in the order.

23           Is there any other matter that we should talk about?

24           MR. KREISS:  Respectfully, your Honor, may I address

25   the Court?

L5EKNAVC

1          THE COURT:  Who's speaking, please?

2          MR. KREISS:  Jason Kreiss, I apologize, on behalf of

3     Mr. Navarro.

4          Respectfully, your Honor, would the Court permit the

5     defendants an opportunity to submit a letter based upon the

6     Court's addressing and the comments made by the Court in

7     reference to our letter of recusal, please?

8          THE COURT:  No.  You have my ruling.  I don't know --

9     sir, you don't practice in New York, right?

10         MR. KREISS:  Not regularly, your Honor, correct.

11         THE COURT:  In New York, it's not our practice to file

12    letters commenting on an opinion or a ruling by the Court.

13    That's not the way we operate or the way the court system

14    operates.

15         So, as I said, 30 days from today, you should conclude

16    your meet-and-confer, and I will look for a report from the

17    parties on proposed trial groupings and disclosure of experts.

18         I suppose we should look at a date in the early fall

19    for a further conference, then, to talk about that.  I will

20    include a date for a further conference sometime in early

21    September.  I need to confer with my courtroom deputy about

22    calendaring, but we'll include that.  If there are issues with

23    the date that we propose, the parties can confer, and then

24    we'll try to work with you to find a date that works.

25         MS. GLAVIN:  Your Honor?

L5EKNAVC

1          THE COURT:  Yes.

2          MS. GLAVIN:  This is Ms. Glavin.

3          Before we conclude the conference, could some of the

4    defense lawyers just have a moment to confer offline just to

5    see if there's any other issues?  There are a couple of things

6    I'd like to discuss, just before we conclude, with my

7    colleagues.

8          THE COURT:  You can, but I don't honestly know how to

9    facilitate that on Team.

10         MS. GLAVIN:  No, no, no, your Honor, if we go on

11   mute -- I can initiate a phone call.

12         THE COURT:  Oh.  I have no objection to that.

13         MS. GLAVIN:  Can we take a ten-minute break or

14   five-minute break?

15         THE COURT:  Why don't we reconvene at 12:10.  I will

16   turn off my camera and mute my line, you can all talk, and I

17   will log back on at 12:10.

18         MS. GLAVIN:  Thank you, your Honor.

19         (Recess)

20         THE COURT:  This is Judge Vyskocil.  We're back on the

21   record.

22         Is the court reporter with us?

23         (Pause)

24         THE COURT:  All right, terrific.  Thank you.

25         So, when you requested leave to consult, I said that I

L5EKNAVC

1  wanted a status or a letter from the parties roughly 30 days

2  out reacting to or telling me the proposal with respect to

3  trial grouping and a proposal for disclosure of defendants'

4  experts, and that we would have a further conference sometime

5  in September.

6          So, are there other matters that we should discuss?

7          All right.  Mr. Adams, is there a further application

8  from the government under the Speedy Trial Act?

9          MR. ADAMS:  There is, your Honor.  In light of the

10  motions schedule that the Court has set, we would ask to

11  exclude time for purposes of considering those motions, and for

12  the Court to consider them as well, through September 9th,

13  which is the reply date.

14          THE COURT:  All right.  I'm going to set a further

15  conference, as I said, sometime in September.  I would suggest

16  that just to leave me time to look at my calendar, we use

17  September 15th as a control date.

18          Is that acceptable to the government?

19          MR. ADAMS:  It is, your Honor.  And we would just ask

20  to extend the exclusion through September 15th for that

21  purpose.

22          THE COURT:  That's what I'm suggesting.

23          MR. ADAMS:  Yes.  Thank you, your Honor.

24          THE COURT:  All right.  And do you want to make a

25  record of the reasons justifying exclusion of time?

L5EKNAVC

1          MR. ADAMS:  Yes.  The interests of justice are

2    furthered, to give the defendants, as they've requested,

3    additional time to review discovery, contemplate and file

4    motions, and for the government to respond to those, and for

5    the Court to begin reviewing those motions as well.

6          THE COURT:  Are there any objections from any

7    defendant?

8          All right.  Hearing none, I will exclude time between

9    today and September 15th.  I do find that the ends of justice

10   served by excluding the time outweigh the interests of the

11   defendants and the public in a speedy trial.  Specifically, the

12   exclusion of time will allow the defendants to complete their

13   review of discovery, to consider and prepare and file any

14   further motions that they wish to make, specifically the

15   second-round motions to suppress that we've been talking about,

16   it will allow for the government to file oppositions,

17   defendants to file any replies, and for the Court to consider

18   those motions.

19          Is there anything --

20          MR. FELDMAN:  Your Honor.

21          THE COURT:  -- further for the record?

22          MR. FELDMAN:  Your Honor -- I'm sorry, your Honor.

23   It's Andrew Feldman, on behalf of Dr. Fishman.

24          To the extent that there are not motions pending

25   during the period of exclusion, which your Honor is talking

L5EKNAVC

1    about, which would be automatically tolled under the Speedy

2    Trial Act, Dr. Fishman is objecting to the exclusion of time

3    under the Speedy Trial Act and is not waiving his rights to a

4    speedy trial.

5              THE COURT:  All right.  Understood.  But the objection

6    is overruled in light of the request from the defendants

7    themselves for more time to consider whether to file motions.

8              Anyone else wish to be heard on any issue?

9              All right.  Then I thank our court reporter,

10   Mr. Walker, very much for being with us and for your patience.

11   I wish everyone a good rest of the day, and please, everyone,

12   stay safe and healthy.

13             Enjoy the nice weather.

14             COUNSEL:  Thank you, Judge.

15                              * * *

16

17

18

19

20

21

22

23

24

25